IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HERBERT AMBROSE DARDEN,

                                Petitioner,

      v.

TIMOTHY DOUMA,

                              Respondent.

OPINION & ORDER

13-cv-738-jdp

---

Petitioner Herbert Darden is currently in the custody of the Wisconsin Department of Corrections at the New Lisbon Correctional Institution. He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging state court convictions for attempted first-degree intentional homicide and armed robbery in Rock County Case No. 2006CF723. Petitioner contends that his trial counsel provided ineffective assistance by (1) failing to call two witnesses who would have testified to petitioner's misidentification as the assailant, and (2) failing to object to evidence regarding petitioner's escape from custody. The petition is fully briefed and ready for decision. After considering the parties' submissions, I conclude that petitioner has failed to show that the Wisconsin courts unreasonably applied federal law regarding ineffective assistance of counsel. Therefore, I will deny the habeas petition.

FACTS

The following facts are drawn from the petition, briefs, and state court records.

Petitioner was charged with attempted first-degree intentional homicide and armed robbery of David Barber, arising out of events occurring on January 7, 2006. Barber was walking to his girlfriend's house at about 9:00 p.m. when he was approached by a man

wearing a hoodie, ski mask, and knit cap. The man put a gun to Barber's head and told Barber to give him his money. After Barber gave the man the $35 to $40 dollars he had with him, the man told Barber to pull his pants down and walk over by a nearby house. Barber turned around and grabbed the robber's hand holding the gun, and the two men wrestled with each other. The robber's cap fell off and mask slipped partially off, so Barber got a look at the robber's face and hair. After they disengaged from each other, the robber shot Barber three times. Barber was able to run to safety.

Later, at the hospital, Barber identified his assailant, who he knew by the street name "Burgler." Barber was able to identify him from the partial view of his face and hair, and because he had a distinctive gait or limp. Barber picked petitioner out of a photo array. Petitioner's photo was in the array because Barber's mother, Jaqueline Barber,[1] told police that "Burgler" was Herbert Darden. However, Jaqueline Barber did not know this firsthand; she got this name from a woman named Antoneisha Lyles after calling her from the hospital.[2]

Petitioner's theory of defense at trial was that Barber had misidentified petitioner as the man who attacked him. However, defense counsel did not investigate or call two potential witnesses. One potential witness was Lyles, who would have testified that she did not know petitioner as "Burgler" and that she did not remember speaking with Jaqueline Barber about petitioner. The other was Sarah Scales, petitioner's ex-girlfriend, who would have testified that petitioner did not walk with a limp.

---

[1] I will refer to David Barber as "Barber" throughout this opinion. I will refer to Jaqueline Barber by her full name.

[2] Jaqueline Barber disclosed Lyles's name during a voir dire examination outside of the presence of the jury.

Also at trial, the state called a police investigator to testify about petitioner's escape from custody while his charges in this case and in an unrelated Illinois drug case were pending. Defense counsel objected to introducing the escape evidence on the grounds that it was irrelevant, unfairly prejudicial, and was not evidence of flight, but the court overruled his objection. However, counsel did not object specifically on the grounds that petitioner had "independent reasons for flight" that could not be explained to the jury because of their prejudicial effect, under *State v. Miller*, 231 Wis. 2d 447, 605 N.W.2d 567 (Wis. App. 1999).

On June 19, 2007, the jury found petitioner guilty of attempted first-degree intentional homicide and armed robbery. He was sentenced to 20 years of confinement and 15 years of extended supervision for attempted homicide, to run concurrently with 15 years of confinement with 10 years of extended supervision on the armed robbery charge.

Petitioner filed a postconviction motion, contending that he received ineffective assistance of counsel. Following a *Machner* hearing on April 4, 2011, the circuit court found that defense counsel had not performed deficiently, and denied petitioner's postconviction motion. Dkt. 9-9. Petitioner appealed this denial to the Wisconsin Court of Appeals, contending that the trial court erred when it denied his postconviction motion. Petitioner specifically argued that defense counsel was ineffective for (1) failing to adequately object to testimony regarding petitioner's escape from police custody in Illinois, and (2) failing to call Lyles and Scales, who would have discredited testimony pertaining to petitioner's identification. Dkt. 9-3. The Wisconsin Court of Appeals affirmed the trial court's ruling, concluding that defense counsel did not provide ineffective assistance by failing to make a specific objection regarding escape evidence or by failing to call Lyles or Scales. *State v. Darden*, 2012 WI App 73, 342 Wis. 2d 249, 816 N.W.2d 351. The Wisconsin Supreme

Court denied petitioner's petition for review, Dkt. 1-2. Petitioner now seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

## ANALYSIS

**A.  Review under 28 U.S.C. § 2254(d)**

Petitioner contends that he is entitled to habeas relief because his trial counsel was ineffective by (1) failing to call two witnesses who would have testified to petitioner's misidentification as the assailant, and (2) failing to object to evidence regarding petitioner's escape from custody.

This court's authority to issue habeas corpus relief for persons in state custody is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Petitioner contends that the state courts unreasonably applied Supreme Court precedent concerning ineffective assistance of counsel. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal

4

principle from Supreme Court opinions but unreasonably applies it to the facts of the particular case. *Id*. at 407-08.

This standard places a high burden on petitioner. *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013) ("This standard . . . is 'difficult to meet.'" (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011))). "Clearly established law" must be set out in the holdings of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). "[A]n 'unreasonable application of' those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Id*. (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The relevant decision in this case is the Wisconsin Court of Appeals's opinion affirming the denial of petitioner's postconviction motion. *See Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006) ("The relevant state court decision is that of the last state court to address the claim on the merits.").

Petitioner's claims are for ineffective assistance of trial counsel. The Wisconsin Court of Appeals identified the controlling two-part test for reviewing these claims. Dkt. 1-1, at 3-4, ¶ 8. First, petitioner needed to show deficient performance, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, petitioner had to demonstrate that the deficient performance caused him prejudice, which requires "showing that counsel's errors were so serious as to deprive [petitioner] of a fair trial." *Id*.

5

"[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This standard is "doubly deferential" on habeas corpus review. *Id.*; *see also Richter*, 562 U.S. at 105 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem (citations omitted)). Thus, my task is not to independently perform the *Strickland* analysis to the facts of petitioner's case. Instead, I must determine whether the Wisconsin Court of Appeals reasonably applied controlling federal law by concluding that petitioner's counsel's actions were not deficient.

## B.  Petitioner's claims

### 1.  Declining to call witnesses

#### a.  Antoneisha Lyles

Petitioner contends that counsel was ineffective for failing to investigate, interview, and call Antoneisha Lyles, who could have discredited Jaqueline Barber's testimony by stating that she never told Jaqueline Barber that petitioner was "Burglar." At the *Machner* hearing, counsel stated that the decision not to call Lyles was a strategic one, explaining as follows:

> Strategically, I did not want Antoneisha Lyles to provide any information. I thought that would be more harmful to the case than anything. Antoneisha Lyles was a member of the community, as were the Dardens, and as was Mr. Barber, and in this case the State did not really produce any information to link Mr. Darden, to the particular street that the shooting was on. There's no independent information that Mr. Darden was living in that neighborhood; that he lived on a particular street; that he had family on that street, or a particular street, or he had friends. The only information really linking him to the area of the shooting came from David Barber and, I believe, Jackie Barber. And I was actually glad for that. So the last thing, you know, that I wanted to do would be to call a defense witness who could connect all those people in the

6

> community and who could place Mr. Darden, you know, on
> those streets, which she would have done.

Dkt. 9-9, at 18-19. The court of appeals agreed with counsel's assessment, stating, "This explanation fit counsel's defense, which was misidentification. That defense would have fallen apart if it was clear that Barber knew Darden before the incident. Thus, not calling Lyles to testify at trial was a rational strategy and not deficient performance." *Darden*, 2012 WI App 73, ¶ 20. I cannot call this conclusion unreasonable given the deference I must give both counsel and the court of appeals. Counsel has a wide berth to decide whether to call particular witnesses, and fairminded jurists could disagree about the strategic value in calling Lyles.

But petitioner argues that counsel was ineffective because he made the decision not to call Lyles without even investigating or interviewing her. Thus, counsel was unaware that Lyles could have given testimony that could have discredited Jaqueline Barber. But "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91. Counsel stated that even had he known how Lyles could have testified, he would not have called her:

> Because how the name, Herbert Darden, came up and how that
> was delivered, how the police ultimately got the name, Herbert
> Darden, and placed him in the lineup, was really a secondary
> issue. It was a collateral issue. It would not have mattered
> whether it was simply really good police work. It would not have
> mattered whether the police generally had an idea who the
> shooter was and put his picture in the lineup. Ultimately, the
> principal issue was his photo ended up in the lineup, and it was
> picked, picked right away. So how it got -- how that information
> was communicated to the police was really a secondary,
> collateral issue.

Dkt. 9-9, at 20-21.

The court of appeals agreed with counsel's view of the issue:

> Furthermore, it was of little import whether or not Jaqueline Barber received Darden's name from Lyles. Barber definitively identified Darden as his attacker in the photo array, which of course did not specify the names of individuals pictured. Darden also testified repeatedly that he was "one hundred percent positive" that the person he identified in the picture and again at trial was the person who robbed and shot him. For these reasons, there was little to gain by making an issue of how the unidentified picture of Darden got into the photo array.

*Darden*, 2012 WI App 73, ¶ 21.

Petitioner has made a plausible argument that Lyles had testimony that might have helped undermine the credibility of Barber and Jaqueline Barber. But that is not enough here, and I conclude that the court of appeals's analysis is not "objectively unreasonable." Counsel made his decision not to investigate Lyles further because he did not consider her to plausibly helpful to the defense—and he reasonably recognized that her testimony could damage the misidentification theory if Lyles linked petitioner to the neighborhood. He also reasonably considered the issue of *how* petitioner ended up in the photo array to be much less important than the question whether Barber correctly identified petitioner, and so Jaqueline Barber's credibility was simply not an important issue worthy of further investigation. Therefore I will deny petitioner's claim for habeas relief regarding the decision to investigate, interview, and call Lyles.

### b.  Sarah Scales

Petitioner similarly argues that defense counsel performed deficiently in failing to investigate, interview, or call Sarah Scales. Scales, an ex-girlfriend of petitioner, would have

testified that petitioner did not walk with a limp.[3] At the *Machner* hearing, counsel explained

why he did not want to put on evidence of petitioner's limp:

> Well the specific reason was that Mr. Darden had been shot in
> the leg prior to this incident, prior to the shooting with Mr.
> Barber, and I felt that would be very -- getting shot in the leg
> would be very consistent with walking with a limp, so I was
> actually glad when the State did not introduce that evidence
> that Mr. Darden had been shot in the leg, and I, frankly, didn't
> want to engage that issue and make a deal of it because I felt
> that was a card that the prosecutor could play and could win. I
> realize that I could call a girlfriend, or family member, and they
> could say well he doesn't walk with a limp, but I also recognize
> that there's information in the record that Mr. Darden had been
> shot in the leg, which would be very consistent with walking
> with a limp.

Dkt. 9-9, at 29-30. The court of appeals concluded that counsel was not deficient for making

this strategic choice:

> At the *Machner* hearing, Darden's trial counsel testified that he
> had not wanted to make an issue of the limp because it would
> have opened the door to evidence that Darden had been shot in
> the leg shortly before Barber was robbed and shot. The limp was
> not the sole basis of Barber's identification of Darden as his
> assailant. Barber testified that he saw Darden's hair and part of
> his face during the struggle. Though the defense attempted to
> impeach this testimony based upon its absence from the original
> statement that Barber gave to the police, the fact is that Barber
> identified Darden in the photo array without knowing his name.
> Counsel's judgment that attempting to establish whether or not
> Darden walked with a limp carried with it more risks than
> benefits was reasonable and not deficient performance.

*Darden*, 2012 WI App 73, ¶ 23.

Petitioner contends here that there is no evidence in the record that petitioner had

been shot or that he walked with a limp. Dkt. 21, at 3. But that is the result of counsel's

---

[3] In his brief, petitioner also contends that Scales would have testified that she did not know
him as "Burglar," but petitioner did not raise this argument in his appeal or mention it in his
habeas petition.

strategic decision: he was able to argue that the only evidence of the limp was Barber's testimony. If petitioner is arguing here that in fact he had not been shot, and that counsel was ineffective because he got this basic fact wrong, then that argument is waived because he did not present it in his postconviction motion.

Petitioner's main argument appears to be that counsel could have diminished the risk involved in presenting this type of evidence by filing a motion in limine to exclude evidence that petitioner had been shot, but this is an unrealistic view of the motion in limine process. Counsel would not have been able to present evidence that petitioner did not have a limp and then successfully exclude any testimony disputing that evidence.

Petitioner's criticism of the decision not to call Scales is weak. Counsel's decision to avoid presenting testimony about the limp appeared to pay off, as it allowed counsel to argue at closing that the state failed to put on any evidence that petitioner had a limp. Ultimately, petitioner was convicted anyway, but habeas courts cannot use hindsight to second-guess reasonable strategic decisions by defense counsel. I agree with the court of appeals that counsel's strategic choice was reasonable, and so I will deny petitioner's claim for habeas relief on this issue.

### 2. Failure to Object to Escape Evidence

Defense counsel raised a motion in limine regarding petitioner's escape from custody in Illinois, and he later renewed his objection during trial before that evidence was proffered. The state wanted to use petitioner's flight as evidence of his guilt. *See, e.g., State v. Quiroz*, 2009 WI App 120, ¶ 18, 320 Wis. 2d 706, 772 N.W.2d 710 ("It is well established that evidence of flight and resistance to arrest has probative value as to guilt. Analytically, flight is an admission by conduct.") (citations omitted). Counsel objected to the evidence as

irrelevant, unfairly prejudicial, and improper character evidence. He also argued that petitioner's actions did not show that he was evading the Wisconsin charges for two reasons: (1) because petitioner's path indicated that he was returning to Rock County; and (2) petitioner did not know that he was facing charges in Wisconsin anyway, so his escape did not demonstrate consciousness of guilt as to those charges. The court admitted the evidence over these objections.

Petitioner brings an ineffective assistance claim regarding counsel's strategy, stating that he should have raised a stronger argument: that "[e]vidence of flight is inadmissible where there is 'an independent reason for flight known by the court which cannot be explained to the jury because of its prejudicial effect upon the defendant.'" *State v. Miller*, 231 Wis. 2d 447, 460, 605 N.W.2d 567, 573 (Ct. App. 1999) (quoting *Liggins v. State*, 726 So. 2d 180, 183 (Miss. 1998)). I take petitioner to be arguing, primarily, that because the trial court had already excluded the Illinois drug charges at the motions in limine stage, under *Miller* the court would have had no choice but to bar the escape evidence because the excluded drug charges were petitioner's independent reason for flight. In other words, petitioner contends that counsel should have been able to exclude both the drug charges and the escape evidence.

Petitioner overstates the helpfulness of *Miller* to his cause, because *Miller* does not compel the result he seeks. As the court of appeals correctly stated in its opinion, *Miller* did not create a bright-line rule forbidding the use of escape evidence where there is a second crime from which the accused might be fleeing. "Rather, when a defendant points to an unrelated crime to explain flight, the trial court must, as it must with all evidence, determine whether to admit the flight evidence by weighing the risk of unfair prejudice with its

probative value." *Quiroz*, 2009 WI App 120, ¶ 27. In *Miller*, the court actually admitted flight evidence in a similar case in which the independent reason for flight was another crime, and stated that the defendant had the opportunity to rebut the flight evidence by explaining "that he was running because he was aware of [an outstanding warrant for a crime unrelated to the crime at issue]." 605 N.W.2d at 574. The court of appeals made a similar ruling in *Quiroz*, which led to the defendant in that case testifying that "he fled because he was arrested for 'more charges.'" 2009 WI App 120, ¶ 27. Under *Miller* and *Quiroz*, the court did not have to exclude the escape evidence; the court had to evaluate its relevance and prejudicial effect. That is exactly what the court did here, albeit without an express invocation of *Miller*.

At the *Machner* hearing, counsel explained that he understood *Miller*, but that made the strategic decision not to invoke that case because he thought *Miller* actually worked against petitioner:

> Well I thought that the *Miller* case was more helpful to the State than to the defense, actually. I thought -- When you look at that case, the trial judge in *Miller* allows the evidence to come in under similar facts situations as this particular case, so I thought, if anything, *Miller* would help the State as opposed to the defense.
>
> * * *
>
> I felt that that [the *Miller*] exception really didn't apply because he could have testified had he wanted to and testified as to other reasons for flight other than the Wisconsin case. But, ultimately, he would have had to have taken the stand and testify, and he didn't want to do that, so that exception really didn't apply.

Dkt. 9-9, at 8, 12. *Miller* and *Quiroz* both suggest that one way a court can deal with escape evidence is to admit the escape evidence with the understanding that the defendant can testify to explain the escape if he chooses. Petitioner's counsel recognized that petitioner did

not want to testify (a point petitioner does not contest), so not pressing the *Miller* case to the court was a reasonable strategic choice.

Petitioner's contention here that there was no evidence that he was aware of the Wisconsin charges when he escaped is flatly wrong. The issue was thoroughly argued to the court, and the state's witness—an officer from the Illinois facility from which petitioner escaped, Marshon Henderson—was subjected to voir dire examination before he testified. Dkt. 9-12, at 20-34. Henderson testified on voir dire that petitioner was informed that he was being held because of the pending charges in Wisconsin. The court overruled petitioner's objection to Henderson's testimony, and Henderson testified to the jury that petitioner had been told that he was under arrest because the pending charges in Wisconsin.

The court of appeals approved of counsel's handling of the issue, stating that "the form and substance of his objection was consistent with both the holding in *Miller* and our later holding in *Quiroz*." *Darden*, 2012 WI App 73, ¶ 16. In short, counsel assertively argued that the escape evidence was unduly prejudicial and not probative, but lost that argument. Expressly citing *Miller* in his argument would not have changed that result. The court of appeals did not unreasonably apply *Strickland* with regard to this issue.

## C.  Certificate of appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. A certificate of appealability will not issue unless petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*,

13

529 U.S. 473, 484 (2000)). Although the rule allows me to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I conclude that petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, I will not issue petitioner a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Herbert Darden's petition for a writ of habeas corpus under 28 U.S.C. § 2254, Dkt. 1, is DENIED, and this case is DISMISSED. The clerk of court is directed to enter judgment for respondent and close this case.

2. A certificate of appealability is DENIED. If petitioner wishes, he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered July 15, 2016.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

14